**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | |
|---|---|
| DIANE JOHNSTON, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>VGW HOLDINGS, LTD., VGW MALTA LTD., VGW GAMES LTD., VGW HOLDINGS U.S., INC., and VGW U.S, INC,<br><br>        Defendants. | Case No. _____<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Diane Johnston, individually and on behalf of other members in the below-defined Class, hereby alleges against Defendants VGW Holdings, Ltd., VGW Malta Ltd., VGW Games Ltd., VGW Holdings U.S., Inc., and VGW U.S., Inc ("Chumba" or "Defendant"), upon personal knowledge as to herself and her own acts, and as to all other matters upon information and belief, based on the investigation made by the undersigned attorneys, as follows:

1.      This Class Action lawsuit is brought by Plaintiff seeking damages, declaratory, injunctive, and equitable relief individually on behalf of the other Class members, each of whom are Alabama residents who have paid and lost money or other things of value on Chumbacasino.com (the "Class").

2.      Chumba owns and operates a popular, internet-based casino website called www.Chumbacasino.com.

3.      Gambling is constitutionally and statutorily prohibited in Alabama. *See* Ala. Const. art. IV, § 65.

4.      Yet Chumbacasino.com is accessible and operational in Alabama.

5.      Chumba does not operate to promote or market another product or service; Chumbacasino.com *is* the product or service.

6.      Chumbacasino.com operates indefinitely and not for a fixed period of time.

7.      On its website, users can play "over 200" casino games, such as "Slots," live casino table games including blackjack and poker, and scratch cards, among many other games ("Chance Games").

8.      The Chance Games are games of chance akin (if not identical) to games already declared unlawful and unconstitutional in Alabama, including slot machines, video poker, and other video-amusement games. *See State v. Epic Tech, LLC*, 378 So. 3d 467, 481 (Ala. 2022); *Barber v. Jefferson Cnty. Racing Ass'n, Inc.*, 960 So. 2d 599, 610 (Ala. 2006); *Opinion Of The Justs.*, 795 So. 2d 630, 643 (Ala. 2001).

9.      Chumba offers prizes, including cash and cash-equivalent prizes such as gift cards. In fact, Chumba's terms and conditions admit it offers "valuable prizes."

10.     Chumba attempts to legitimize itself by stating that no purchase is necessary since it provides limited free coins and since players may acquire extra virtual token bundles by request (subject to many conditions).

11.     But Chumba accepts, and practically requires, a participant to pay to play to win a prize. Only "Sweeps Coins" can earn a prize. Chumba markets, advertises, and encourages participants to purchase "Sweep Coins," and it makes a very limited number of "Sweep Coins" available for free, although conditionally and not at any locations in Alabama.

12.     Even then, as further alleged below, free play doesn't offer the prizes that attract Alabama residents, including Plaintiff, to Chumbacasino.com. Instead, Alabama residents, including Plaintiff, access Chumbacaisno.com to win prizes, just as Chumba intends. And the only way to win prizes is with Sweep Coins.

13.     Nonetheless, the Alabama Supreme Court is clear that even though "the prize may go to someone who has paid nothing does not negative the fact that many have paid for their chance. Because some have not been drawn into the gambling phase does not render it any the less a lottery, with whatever of evil it engenders, as to the large public who have paid." *Barber v. Jefferson Cnty. Racing Ass'n, Inc.*, 960 So. 2d 599, 614 (Ala. 2006).

14.     Since Chumba requires participants to submit consideration for a chance to win a prize, it is an illegal gambling operation in Alabama.

15.     The legality of Chumba is not in question in states like Alabama with strict gambling laws.

16.     For example, regulators in Idaho, Washington, Montana, Michigan, Delaware, and Connecticut have all acted against the VGW Defendants for running their unlicensed and unregulated gambling website. The Connecticut Department of Consumer Protection issued a cease-and-desist letter earlier this year, accusing Defendants and their related entities of violating state gambling laws. The Michigan Gaming Control Board banned ChumbaCasino.com in the state.  In Delaware—where the US-based VGW Defendants are incorporated—the Department of Safety & Homeland Security, Division of Gaming Enforcement, issued a cease-and-desist letter to Defendants demanding that they take immediate action to ensure that people located in Delaware are not permitted to gamble on the website.

17.     Plaintiff and Class members each wagered money or other things of value on Chumbacasino.us and lost.

18.     Moreover, Chumba engaged in unconscionable, false, misleading, or deceptive acts or practices in the conduct of trade or commerce in Alabama, including causing Plaintiff and Class members to believe Chumba was approved and certified by the State of Alabama, when in fact it is illegal gambling.

A.     **The Parties**

19.      Plaintiff Diane Johnston is an Alabama citizen and a resident of Alexander City, Alabama. Plaintiff wagered and lost money on Defendant's illegal gambling website. As a result, she suffered an injury in fact resulting in the loss of money and/or property that is recoverable in Alabama. Plaintiff did not know Chumba was illegal gambling in Alabama. Based on Chumba's advertising and website, Plaintiff thought that Chumba had the approval and certification of the State of Alabama, among other things. Had she known the truth, she would not have participated in online gambling on Chumba.

20.     Defendant VGW Holdings U.S. Inc. ("VGW Holdings US") is a Delaware corporation with its principal place of business at 1881 9th Street, Suite 2002, Boulder Colorado, 80302.  VGW Holdings also maintains an office at 442 Post Street, Suite 900, San Francisco, CA 94102.

21.     Defendant VGW U.S. Inc. ("VGW US") is a Delaware corporation with its principal place of business at 1881 9th Street, Suite 2002, Boulder Colorado, 80302.  VGW U.S. also maintains an office at 442 Post Street, Suite 900, San Francisco, CA 94102.

22.     Both Defendants VGW Holdings US and VGW US have stated in court filings that they "specialize[] in the development and publication of online casino-themed social games," including the gambling website at issue here, ChumbaCasino.com.

23.     Defendant VGW Malta Ltd. is a Maltese corporation with its principal place of business at Trident Park, Notabile Gardens No. 6, Level 3 Central Business District Mdina Road, Zone 2 BIRKIRKARA, CBD2010, Malta.  VGW Malta owns and operates the website ChumbaCasino.com.  All gambling payments are processed by VGW Malta.

24.     Defendant VGW Holdings, Ltd. is a Maltese corporation with its principal place of business at Trident Park, Notabile Gardens No. 6, Level 3 Central Business District Mdina Road, Zone 2 BIRKIRKARA, CBD2010, Malta.  VGW Holdings, Ltd. co-operates the website and claims that it is responsible for processing gambling winnings.

25.      Defendant VGW Games is a Maltese corporation with its principal place of business at Trident Park, Notabile Gardens No. 6, Level 3 Central Business District Mdina Road, Zone 2 BIRKIRKARA, CBD2010, Malta.  VGW Games co-operates the website and claims to be the regulated and licensed entity associated with the website.

26.     Through the website and their affiliate offices in the US, each VGW Defendant conducts business in Alabama.

**B.     Jurisdiction and Venue**

27.     This Court has diversity jurisdiction over this action under 28 U.S.C. §§ 1332(d) because the amount in controversy for the Class exceeds $5,000,000 and Plaintiff and one or more of the other Class members are citizens of a different state than Defendant.

28.     Venue is proper in this District under 28 U.S.C. § 1391 because Chumba is deemed to reside in any judicial district in which it is subject to personal jurisdiction. Additionally, Plaintiff wagered and lost money on Chumba in this District, and Chumba has marketed and advertised its website in this District, made its website accessible in this District, accepted wagers in this District, and paid out prizes in this District, among other things. Thus, a substantial part of the events or omissions giving rise to the claim occurred within this District.

29.     This Court has personal jurisdiction over Plaintiff because Plaintiff resides in Alabama and consents to the jurisdiction of the Court.

30.     This Court has personal jurisdiction over Chumba because Chumba, at all times relevant hereto, has systematically and continually conducted, and continues to conduct, business in this State, and this lawsuit arises out of those contacts with Alabama.

31.     Specifically, Cumba is an interactive website used for commercial purposes – specifically, gambling.

32.     It was foreseeable and intended that Alabama residents would use the Chumba website because Defendant knew that Alabama residents frequently gamble on the website and that they would continue to do so.

33.     Defendants know that Alabama residents use the website because it asks users to disclose which state they live in when registering to use the website.

34.     In fact, Chumba encouraged it by not listing Alabama as an excluded territory.

35.     Chumba also advertises to Alabama residents in Alabama, and emails Alabama residents about games and other offers it seeks to promote.

36.     In other words, Chumba reached into Alabama and invited its customers to participate on its website.

37.     Chumba appeals to, and profits from, an audience in Alabama, and Alabama residents form a significant portion of the website's customer base and revenue.

38.     Chumba also collects information and data about Alabama residents.

39.     Defendant took steps to ensure that Alabama residents would have access to the website so that they could gamble online.  Specifically, there is widely available technology that allows websites to detect the location of a website visitor, including the state in which they are located.  Reputable online gambling companies utilize this technology to prevent website users from using their websites if the website user is located in a state where online gambling is illegal, like Alabama.  However, Defendant made an affirmative decision to *not* use that technology for the Chumba website, because that would prevent Defendant from profiting from gambling in Alabama

### C.     The Problem Of Online Gambling

40.     The online gambling industry is profiting from gambling addiction the same way the Sackler family once profited from opioids.

41.     For decades, the proportion of Americans diagnosed with pathological gambling held steady at less than 1 percent, with 7 million Americans believed to be suffering from a gambling addiction at an annual "social cost" of $14 billion.  But those numbers have skyrocketed with the advent of online gambling: from 2021 to 2022, there was a 45 percent increase in the number of calls, texts, and messages to the National Problem Gambling Helpline.

42.     According to one study, up to 30 percent of problem gamblers have attempted suicide, while a larger percentage of such individuals reported having suicidal ideations.

43.     The fallout is not limited to gamblers.  It has a ripple effect that negatively impacts spouses, partners, children, and employers.

44.     During the last five years, online gambling websites have proliferated with no way to reduce the ensuing harm.  This shift is already evident with the gamblers seeking treatment, who tend to be younger, predominantly male, and raised on smart phones.  This rise also includes a relatively new phenomenon: gambling addiction among minors under the age of 18.  Whereas

brick-and-mortar casinos could take steps to exclude minors, the easy access to online gambling has made it easier for underage minors to participate in gambling.

45.    Treating online gambling addiction poses challenges that are different from other forms of addiction.  For an individual with substance use disorder, safety measures like disposing of all alcohol or drug paraphernalia or avoiding triggering social events are key to treatment. Things are not so clear-cut when treating digital gambling because for most people, mobile devices have become a necessity of life.  So, it's not a question of avoiding the drive to the casino, but instead, a constant struggle to avoid the temptation to gamble from home, work, restaurants, the grocery store, while on vacation, and anywhere else where the gambler's device can receive a signal.  Furthermore, unlike the billions of dollars of federal funding dedicated to alcohol, tobacco and drug addiction programs, there are no federal funds allocated to support problem gambling services.

46.    To make matters worse, although the casino gaming industry is one of the most regulated businesses in the United States, online gaming websites like Chumbacasino.com are unlicensed and unregulated.  A gaming license is a privilege that requires, among other things: (1) meeting state standards; (2) background checks on company officers and directors; (3) adherence to responsible gaming programs; (4) anti-money laundering measures; and (5) myriad other requirements concerning data privacy, security, and responding to customer complaints. Defendant dodges all these requirements. As one gambling treatment provider warned, "[u]nregulated platforms [like Chumbacasino.com] can pose significant risks for players struggling with gambling addiction.  The lack of proper safeguards often exacerbates financial and emotional stress, making it harder for individuals to regain control."

47.    For example, Chumba accepts credit cards to pay for gambling on its website, in violation of the Unlawful Internet Gambling Enforcement Act, 31 U.S.C. §§ 5361-5367.  As a result, people, including Plaintiff, have racked up massive debt gambling on Chumba.

48.    Chumba also deprives state and local governments of tax revenues that legitimate, regulated casinos pay.

49.     The bottom line is that Chumbacasino.com lets people play online casino games and wager real money to win real prizes while skirting regulation and licensing, offering inadequate player protections, exploiting adolescents, and siphoning revenue from state governments.

50.     In Alabama, it is illegal to operate and offer online gambling casinos, including websites that offer slot machines, blackjack, roulette, and poker.  In this regard, Alabama has a fundamental and deep-rooted public policy against gambling.

**D.    Defendant Chumba Casino Operates A Gambling Website**

51.     Chumba operates a popular gambling website available at Chumbacasino.com.

52.     Chumba states that the website is "America's #1 online social casino."

53.     When users log onto the website, the first thing they see is an array of colorful, digital slot machines and other Chance Games, along with information about the user's gambling balance near the top of the screen (denoted SC):



54.     The website offers "live dealer" table games where online players interact directly with dealers visible via a webcam to play games like blackjack and roulette.

55.     Just like one would see on the floor of a brick-and-mortar casino in Las Vegas, the digital slot machines come in a wide variety of styles and themes.

56.    Even the name of the website—ChumbaCasino.com—evokes the obvious purpose of the website: gambling.

57.    Despite the clear purpose of the website, however, the word "gambling" is never used to describe what happens on the website.  Instead, Defendant gaslights users—including adolescents or vulnerable populations struggling with gambling disorder—with euphemisms like "social gaming" and "sweepstakes."  Chumba Casino falsely claims that the website is legal, when it is not.

58.    It is common for individual users in Alabama, including Plaintiff, to lose tens of thousands of dollars gambling on the website.

59.    Chumba is accessible and made available to Alabama residents, and Chumba misrepresents and causes confusion about the legality of its website in Alabama by not listing Alabama as an excluded territory.

60.    Chumba knows that Alabama residents are gambling on its website, as users must create an account and verify their state before playing, and Chumba geo-fences some states, while not geo-fencing Alabama, confirming that Chumba has the technology to know the states from which its participants are gambling.

E.    **Chumba Casino Has Massively Scaled-Up An Old Gimmick That Criminals Once Tried To Use To Evade State Gambling Laws**

1.    **The Internet Café "Sweepstakes" Crime Trend Of The Early 2000s**

61.    The early 2000s saw a nationwide crime trend involving criminals who attempted to evade gambling laws by offering gambling at Internet cafés.  These operations—often located in suburban strip malls—would "promote" the sale of a product such as Internet time or long-distance telephone minutes by offering "free" sweepstakes entries to customers.  When customers purchased Internet time or whatever other product was offered, they received a corresponding number of "sweepstakes" points for each dollar spent.   Customers could then use those

sweepstakes points to play "casino-style" slot machine games for cash prizes at computer terminals provided at the Internet cafés.

62.    Gambling in Alabama consists of three elements: prize, chance, and consideration (i.e., payment).  By artificially separating the consideration from the chance to win real money, criminal operators of Internet cafés believed that they could evade state gambling laws, while claiming that the activities were no different from the kinds of sweepstakes promotions occasionally offered by Publisher's Clearing House and McDonalds.

63.    Courts and state law enforcement officials in the United States, including in Alabama, repeatedly determined that such tactics were an obvious pretext and cover for illegal gambling.

64.    In response to the rise of Internet cafés, the Alabama Supreme Court has time and again ruled they are illegal gambling.

### 2.    Chumba Casino Is An Online Version Of An Internet Café

65.    Like the criminal Internet cafés in operation a decade ago, Defendants here attempt to separate the element of consideration from gambling; in this case by offering a two-tiered system of virtual coins, both of which function like casino chips.

66.    The first type of virtual currency, called "Gold Coins," can be used to play the casino games in "standard mode" with no potential to win money.  When using Gold Coins in "standard mode," a player can only win or lose Gold Coins.  However, for the most part, people only go to Chumbacasino.com to engage in real-money gambling, so those Gold Coins are largely ignored.

67.    The second type of virtual currency –called "Sweeps Coins" – can be used to play the same casino-style games in a "promotional sweepstakes mode," where they carry real monetary value and can be redeemed for prizes and money.

68.    To get Sweeps Coins, website visitors typically must purchase them in a package with Gold Coins.  The more Gold Coins a user purchases, the more Sweepstakes Coins the user

also receives.  So, in effect, when a person buys Gold Coins, they are also buying Sweeps Coins as part of a package.

69.    Chumba pretends that the "Sweeps Coins" are a free bonus added to the sale of Gold Coins, but as shown above, that is exactly what the owners of Internet cafés unsuccessfully argued before.  The reality is that generally, both coins must be purchased, and Chumba Casino will only sell them together as a package.  There are two other problems with the notion that Sweeps Coins are just a "free" add-on bonus to the Gold Coins.

70.    First, as noted above, most people ignore the Gold Coins after buying them.

71.    Second, the number of Sweeps Coins is essentially a proxy for the amount of real money spent or won.  That is because, depending on the package bought, there is a 1:1 or a nearly 1:1 correlation between the number of dollars spent and the number of Sweeps Coins provided in each purchase.  So, for example, if someone spends $2 dollars ostensibly to by Gold Coins, they get 2 Sweeps Coins; whereas if they spend $5, they will get 5 Sweeps Coins, and so on.  If someone purchases $1000 on virtual coins, they get 1005 Sweeps Coins.



72.    Likewise, Sweeps Coins can be cashed-out for real-world money and are redeemable for cash on a 1:1 basis.  So, for example, 100 Sweeps Coins can be redeemed for $100.  This is how Internet cafés worked.

73.    Players must use real currency to purchase additional virtual Gold Coins and Sweeps Coins through the website.  In this way, the purchase of virtual coins is like what happens when a player purchases casino chips in a brick-and-mortar casino, which can then be used to place wagers at table games.

74.    Chumba.com, publicly admitted in a securities filing that social casino gaming websites are modelled on the illegal Internet cafés that were popular in the early 2000's:

> 67  Over the last 10 years, 'Internet Sweepstakes Cafes' have evolved and proliferated across the US. They operate as internet cafes that offer their customers entrance into a sweepstakes draw upon the purchase of a product, often internet time or telephone call minutes. The participant can find out whether they have won the pre-determined draw by a simple reveal but many choose to do so through a programme that simulates a slot machine or poker game. This may even include an online element, but neither the presentation nor their interaction affects the outcome of the draw.

> 68  Increasingly sweepstakes gaming has emerged out of these cafes, with consumer products allowing 'free' entrance into games in which cash prizes can be won in return.

75.    If that isn't enough, Chumba also admitted it's goal is target the "unrealised [sic.] United States real-money gaming market."

> •  VGW is an Australian technology and online gaming company that develops and operates international cash-prize contests through its innovative social casino products.  It currently operates on the largest social network and leverages the world's leading payment provider platforms.

> •  VGW operates a sweepstakes social casino, targeting the global casino market, particularly the unrealised United States real-money gaming market.

76.    There are several other factors that show that the true purpose of the website is gambling, and that like the Internet cafés that preceded the launch of Chumbacasino.com, the use of the term "sweepstakes" is a pretext for gambling.

77.     First, the casino-like atmosphere and imagery associated with the website, as well as the use of the word "casino" in the website name, is evidence that the true purpose of the website is to promote gambling, as opposed to a sweepstakes promotion of some other good or service.

78.     Second, the duration of the "sweepstakes" promotion also demonstrates that the true purpose of the website is not to promote a bona fide consumer good or service, but instead gambling.  A traditional sweepstakes promotion is a limited term event designed to attract consumer attention to a product or business, and ordinarily expires after a few weeks or months. In contrast, the purported "sweepstakes" on Chumbacasino.com run perpetually.

79.     Third, the typical payout percentage for a temporary promotional sweepstakes is a small percentage of revenue earned by the company.  For example, the typical grand prize for McDonald's annual Monopoly-themed sweepstakes is usually about $1 million, which is a tiny fraction of the *billions* of dollars McDonald's earns each year.  By contrast, casinos typically pay out between 80-96 percent of their revenues (sometimes referred to as the "return to player" or "RTP").  Defendant Chumba Casino claims to have a 90-96% RTP on its website.

80.     Fourth, conditions designed to keep customers playing longer are indicative that the true purpose of the website is to keep them gambling, rather than a true sweepstakes aimed at promoting a product or service. Unlike traditional sweepstakes games where prizes can be claimed immediately, Defendant Chumba Casino imposes restrictions on prize redemption that can cause website visitors to play longer.  Specifically, website visitors must have at least 50 Sweeps Coins to obtain gift cards and 100 Sweeps Coins to obtain cash.  This forces consumers to continue gambling and eventually lose their balance.

81.     Fifth, most if not all users of the website largely ignore their ample supply of Gold Coins in favor of playing Sweeps Coins, which is a clear indication that the Sweeps Coins, and not the supposedly promoted product (Gold Coins), are the primary subject of the transaction.

82.     Sixth, Hugh5 doesn't promote a good or service, instead it is the good or service.

83.     In sum, the parallels between Defendant Chumba Casino's website and the Internet sweepstakes café business model—which courts have held are incontestably gambling—are clear:

✓ Both sell a "product" that comes with a commensurate number of "free" sweepstakes entries to play real money 'casino-style' games of chance in a 'casino-like' setting. Instead of the cafés selling a "prepaid phone card," Defendant sells a virtual gold coin.

✓ Both run sweepstakes games perpetually and not on a limited and occasional basis, as is typical with legitimate promotional sweepstakes like the McDonald's Monopoly sweepstakes.

✓ Both offer casino-like payouts, typically 90% or more of revenues, whereas legitimate promotional sweepstakes normally have very low prize to entrant ratios.

✓ Both offer several ways to get free entries without requiring a product purchase, such as by mailing a postcard to a designated P.O. Box address, although the number of free entries awarded through this method is a very low amount, if anything at all.

**F.     Chumba Casino Promotes Gambling To Underage Minors**

84.     The National Institute of Health reports that "despite its illegality among adolescents, online gambling is a common practice, which puts their mental health and well-being at serious risk."  J. Behav. Addict., 2021 Sept. 16;10(3):566-586.  Some research indicates a "greater addictive potential of online gambling over traditional gambling, especially for young problem gamblers."  This general vulnerability is due to the developmental characteristics of adolescence, where individuals are more likely to engage in risky behaviors and develop addiction problems due to immature self-regulation capacity, impulsivity, external locus of control, and susceptibility to contextual factors.  *See id.*   "They may be lured by the pop-up gambling advertisements, offers of gifts and free play, tempting easy win messages, thrill of many online games, and visually exciting graphics and photos presented with the games."  *Id.*

14

85.    The lower the age of online gambling onset, the higher the probability of developing problematic online gambling and the more severe the psychosocial consequences are.

86.    According to a 2024 University of Michigan national poll on children's health, nearly a third of U.S. parents say that they or another adult in their household have participated in gambling.  Among those households, two-thirds reported that their teen has a bank account or credit card in their own name, and one in six admitted they would not know if their own child was betting online.

87.    Chumba Casino is exploiting this phenomenon for profit.

88.    In fact, Chumba relies on celebrity endorsements to appeal to minors, including from Ryan Seacrest.

**G.    Defendant Misleads the Public with False Claims of Legality**

89.    Chumba also engages in unconscionable, false, misleading, or deceptive acts or practices in the conduct of trade or commerce by misleading and causing confusion that participation in Chumba is legal in Alabama.

90.    In its terms and conditions, Chumba states its platform and games are not accessible and cannot be played by anyone in an "Restricted Territory."

91.    In its terms and conditions, Chumba lists the following Restricted Territories: "Connecticut, Delaware, Idaho, Louisiana, Mississippi, Montana, Nevada, New Jersey, New York and Washington."

92.    Chumba does not include Alabama as a restricted territory, although online gambling in any form is strictly prohibited by the State of Alabama.

93.    Moreover, Chumba is accessible in Alabama, which causes the users to believe that Alabama permits such online gaming.

**H.    All Purported Contracts With Defendant Never Existed**

94.    The entire contract, including the arbitration and delegation provisions, lack consideration and mutual assent.

95.     The only consideration paid by Plaintiffs and the Class members was wagers to gamble.

96.     In Alabama, "[a]ll contracts founded in whole or in part on a gambling consideration are void." §8-1-150, Ala. Code 1975.

97.     Thus, no contract was ever formed between the parties, and any purported contract between herself and Defendant, and any contractually based defenses Defendant may raise are likewise void.

98.     And the *entire* contract is void, because "even if the arbitration provision is severed from the rest of any 'contract,' the arbitration provision itself is void as a matter of law pursuant to § 8–1–150." *Macon Cnty. Greyhound Park, Inc. v. Hoffman*, 226 So. 3d 152, 167 (Ala. 2016).

99.     Even if not void, they are unconscionable as the terms and conditions is an adhesion contract.

100.     Plaintiff and Class members had no opportunity to negotiate the contract terms, and the terms never changed for any Class member.

101.     Plaintiff and Class members had *zero* bargaining power.

102.     Plaintiff and Class members could not have used Chumba unless they agreed to the terms and conditions, and they could not have obtained comparable products or services unless they agreed to arbitrate.

103.     The terms and conditions are not easily accessible, and the arbitration clause, damages limitation, and other material provisions are not conspicuous. Instead, they are buried in a sea of font, in the same color and same type, not bold or in capital letters, and don't require an independent signature or acknowledgement.

104.     The terms and conditions also unconscionably limit Plaintiffs' and Class members' damages, and do not afford them an opportunity to select or have a say in the arbitrator(s).

16

105.    Moreover, the scope of the arbitration agreement, damages limitations, and other material provisions is too large, limiting all damages for every single claim against every single party, known or unknown.

106.    The inclusion of a class action waiver is also unconscionable as the only practical effect is to chill or prevent claims, affording Chumba immunity.

107.    Moreover, the expenses and forum are unfair and unconscionable, as the cost to pursue individual arbitration likely exceeds the reward, further chilling and preventing claims and affording Chumba immunity.

108.    In sum, Plaintiffs and Class members paid to forgo everything – inability to protect their statutory and constitutional rights – and Chumba gains immunity at no cost. Plaintiffs and Class members were not given a *quid pro quo* for agreeing to arbitrate and forgoing their constitutional right to a trial by jury.

109.    Moreover, Plaintiffs and Class members were fraudulently induced into entering these contracts. Chumba misrepresented that it was legal in Alabama, on which Plaintiff and Class members relied. Had Chumba disclosed the truth that it is not legal in Alabama, Plaintiffs and Class members would not have entered into the contract with Chumba.

110.    Finally, the contract is illusory, since Chumba reserves the right to change the terms at any time without prior notice.

**I.    Class Action Allegations**

111.    Plaintiff brings this action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of herself and all others similarly situated.

112.    Plaintiff seeks to represent the following Alabama Class:

All Alabama residents who have paid and lost money or other things of value on Chumba.

113.    Alternatively, Plaintiff seeks to represent the following Alternative Alabama Class:[1]

> All Alabama residents who have paid and lost money or other things of value on Chumba in the last six months.

114.    Excluded from the Class are Defendant and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; the judicial officers, and their immediate family members; and Court staff assigned to this case.  Plaintiff reserve the right to modify or amend the Class definition, as appropriate, during the course of this litigation.

115.    This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

116.    **Numerosity – Federal Rule of Civil Procedure 23(a)(1)**.  The members of the Class are so numerous and geographically dispersed that individual joinder of all class members is impracticable.  While Plaintiff is informed and believes that there are hundreds to thousands of members of the Class, the precise number of Class Members is unknown to Plaintiff, but may be ascertained from Defendant's books and records.  Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

117.    **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)**.  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

    a.    Whether Defendant engaged in the conduct alleged herein;

    b.    Whether Defendant's alleged conduct violates applicable law;

    c.    Whether Chumba is illegal gambling in Alabama;

    d.    Whether Plaintiffs and Class members wagered and lost money or other things value on Chumba in Alabama;

---

[1] The Alabama Class and the Alternative Alabama Class are hereinafter referred to as the "Class."

    e.   The amount of money or other things of value wagered and lost by Plaintiffs and Class members in Alabama;

    f.   Whether Defendant engaged in unconscionable, false, misleading, or deceptive acts or practices in the conduct of trade or commerce in Alabama;

    g.   Whether Defendant's unconscionable, false, misleading, or deceptive acts or practices in the conduct of trade or commerce in Alabama were likely to deceive Class members;

    h.   whether Class members are entitled to damages, restitution, restitutionary disgorgement, equitable relief, statutory damages, exemplary damages, and/or other relief; and

    i.   the amount and nature of relief to be awarded to Plaintiffs and the other Class members.

118.    **Typicality – Federal Rule of Civil Procedure 23(a)(3).**  Plaintiff's claims are typical of the other Class members' claims because Plaintiff and the Class members wagered and lost money or other things of value on Chumba in Alabama.  Also, neither Plaintiff nor the other Class Members would have participated on Chumba had Defendant not engage in unconscionable, false, misleading, or deceptive acts or practices in the conduct of trade or commerce.  Plaintiff and the other Class members suffered damages as a direct proximate result of the same wrongful practices in which Defendant engaged.  Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the other Class members.

119.    **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the other members of the Class that she seeks to represent, Plaintiff retained counsel competent and experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.  The Class's interests will be fairly and adequately protected by Plaintiff and her counsel.

120.    **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).**  Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class members as a whole.

121.    **Superiority – Federal Rule of Civil Procedure 23(b)(3).**  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims, so it would be impracticable for the Class members to individually seek redress.  Even if the Class members could afford litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

122.    **Ascertainability –** Chumba maintains a robust database with all its participants. Each participant must create an account to participate and must select and verify which state they are from. Chumba also assigns each participant's account an individually identifiable number, and Chumba tracks winning and losses, because it controls how much a player can wager and cashout a day.

**J.    Causes Of Action**

### FIRST CAUSE OF ACTION
**Declaratory Judgment**
**28 U.S.C. §§2201 *et seq*.**

123.    Plaintiff incorporates by reference the allegations contained in paragraphs 1-122 of this complaint.

124.    Plaintiff brings this count individually and on behalf of all other Class members.

125.    Alabama law strongly prohibits any form of gambling.

126. In fact, gambling is constitutionally prohibited. Ala. Const., Art. IV, §65.

127. In Alabama, gambling occurs when one "stakes or risks something of value upon the outcome of a contest of chance or a future contingent event not under his control or influence, upon an agreement or understanding that he or someone else will receive something of value in the event of a certain outcome."

128. In Alabama, "Something of value" is defined as "[a]ny money or property, ... or article exchangeable for money or property or any form of credit or promise directly or indirectly contemplating transfer of money or property or of any interest therein or involving extension of a service entertainment or a privilege of playing at a ... scheme without charge."

129. In Alabama, a game is chance-based, not skill-based, when more chance is involved in the outcome than skill.

130. Chumba operates an illegal gambling website wherein participants pay consideration for the chance to win a prize.

131. The Chane Games offered by Chumba are predominantly games of chance and do not involve any level of skill.

132. The prizes Chumba offers are valuable and can be used as or converted into US currency.

133. Chumba operates an online casino, not a sweepstakes. In Alabama, "even though the player is assured of his money's worth of some commodity and hence cannot lose," it is still illegal gambling. In fact, even paying back up to 98% of all money played is illegal gambling (where the typical sweepstakes payout is 50%). And the duration of traditional sweepstakes is limited, not indefinite, like Chumba. And just because Plaintiff and Class members can play for free does not save Chumba, the Alabama Supreme Court has long held that the availability of free chances is not necessarily dispositive of whether the game is a gambling scheme: "That the prize may go to someone who has paid nothing does not negative the fact that many have paid for their chance. Because some have not been drawn into the gambling phase does not render it any the less a lottery, with whatever of evil it engenders, as to the large public who have paid." *Barber v.*

*Jefferson Cnty. Racing Ass'n, Inc.*, 960 So. 2d 599, 614 (Ala. 2006). Moreover, Chumba does not promote or market a good or service, it is the good or service. And Chumba does not offer any free-play tokens available at any location in Alabama.

134.    Plaintiff and Class members each paid money or other things of value to Chumba to play the Chance Games for the sole purpose of winning a prize (gift cards or cryptocurrency).

135.    Plaintiffs and Class members seek an order declaring that (1) Chumba is illegal gambling in Alabama and (2) any authority under which it purports to operate is unconstitutional, as well as a permanent injunction enjoining Chumba from operating in Alabama, with disgorgement of profits.

136.    Plaintiffs and Class members also seek a speedy declaratory judgment hearing pursuant to Fed. R. Civ P. 57.

**SECOND CAUSE OF ACTION**
**Alabama Gambling Loss Recovery Statute**
**Ala. Code §§ 8-1-150, *et seq.***

137.    Plaintiff incorporates by reference the allegations contained in paragraphs 1-136 of this Complaint.

138.    Plaintiff brings this count individually and on behalf of all other Class members.

139.    Plaintiff is similarly situated as other Class members, as each are Alabama residents who have either paid and lost money or other things of value on Chumba in the last six months.

140.    Chumba operates an illegal gambling website that is accessible in Alabama.

141.    In the last six months, Plaintiff and other Class members paid and lost money or other things of value on Chumba.

142.    Plaintiffs and other Class members demand recovery of the money or other things of value paid and lost on Chumba in the last six months in an amount to be determined at trial, including interest.

143.    Plaintiffs and Class members also seek an order declaring that (1) Chumba is illegal gambling in Alabama and (2) any authority under which it purports to operate is unconstitutional,

as well as a permanent injunction enjoining Chumba from operating in Alabama, with disgorgement of profits.

## **THIRD CAUSE OF ACTION**
### **Violations Of the Alabama Deceptive Trade Practices Act**
### **Ala. Code §§ 8-19-1, *et seq*.**

144.    Plaintiff incorporates by reference the allegations contained in paragraphs 1-143 of this Complaint.

145.    Plaintiff brings this count individually and on behalf of all other Class members.

146.    Defendant, Plaintiff, and Class members are "persons" within the meaning of Ala. Code § 8-19-3.

147.    Plaintiff and the Class members are "consumers" within the meaning of Ala. Code § 8-19-3.

148.    Defendant offered "goods" and/or "services" within the meaning of Ala. Code § 8-19-3.

149.    Defendant is engaged in "trade" or "commerce" within the meaning of Ala. Code. § 8-19-3.

150.    The Alabama Deceptive Trade Practices Act (ADTPA), Ala. Code. § 8-19-5, prohibits "[e]ngaging in . . . unconscionable, false, or deceptive act[s] or practice[s] in business, commerce, or trade."

151.    The ADTPA provides a non-exhaustive list of unconscionable, false, or deceptive acts or business practices, including but not limited to:

a.    Causing confusion or misunderstanding of approval of good or services;

b.    Causing confusion or misunderstanding as to the certification of another of goods or services;

c.    Representing that goods or services are of a particular standard if they are not; and

d.    Engaging in any other unconscionable, false, misleading, or deceptive act or practice.

152.    Defendant violated the ADTPA by misrepresenting or causing confusion or misunderstanding that gambling on Chumba is legal and approved or certified by the State, when in fact it is illegal gambling in Alabama.

153.    Defendant further violated the ADTPA by representing that the goods or services are of a particular standard and legal in Alabama, when in fact gambling is illegal in Alabama.

154.    Defendant further violated the ADTPA by representing, implying, and/or failing to disclose that its goods or services are illegal in Alabama, which is an unconscionable, false, misleading, and/or deceptive act and/or business practice.

155.    Other unconscionable, false, misleading, and/or deceptive act and/or business practice employed by Defendant include:

    e.    deceiving or confusing customers into believing that that the gambling transactions confer or involve certain rights, remedies, or obligations (i.e., the right to recover winnings and the obligation to pay for losses), when in fact any such rights, remedies, or obligations are prohibited by law; and

    f.    representing that the website users will receive an economic benefit (in the form of gambling winnings), when the earning of the benefit is contingent on an event to occur subsequent to the consummation of the transaction (i.e., winning the bet).

156.    To the extent required by law, Defendant owed a duty to Plaintiff and the Class because disclosure that participation on its website is illegal was necessary to dispel misleading impressions that participation on Defendant's website was legal.

157.    Defendant's unfair or deceptive acts or practices were likely to, and did, in fact, deceive Plaintiffs and Class members about the true approval, certification, and legality of its goods or services.

158.    Defendant's violations present a continuing risk to Plaintiffs and the Class members, as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

159.    Defendant acted with knowledge and intent to deceive.

160.    Plaintiff and Class members suffered ascertainable losses and actual damages as a direct result of Defendant's conduct. Plaintiff and other Class members would not have participated on Chumba had Defendant disclosed the true nature of Chumba.

161.    Pursuant to Ala. Code § 8-19-10, Plaintiff and the Class members seek an order enjoining Defendant's unfair and/or deceptive acts or practices and awarding damages, treble damages, and any other just and proper relief available under the ADTPA.

162.    Notice is not required since Defendant does not maintain a place of business or does not keep assets within Alabama.

**K.    Prayer For Relief**

WHEREFORE, Plaintiff, individually and on behalf of the Class, respectfully request that the Court enter judgment in her favor and against Defendant, as follows:

A.    Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as Class Representatives, and appointing Plaintiff's attorneys as Class Counsel;

B.    Declaring that Chumba is illegal gambling in Alabama and that any authority under which it purports to operate is not Constitutional;

C.    Enter a permanent injunction permanently enjoining Defendant from operating Chumba in Alabama;

D.    Ordering Defendant to refund all wages lost by the Class and pay actual and statutory damages (including punitive damages) and restitution and disgorgement of profits to Plaintiff and the Class, as allowable by law;

E.    Ordering Defendant to pay both pre- and post-judgment interest on any amount awarded;

F.    Ordering Defendant to pay attorneys' fees and costs of suit; and

G.    Ordering such other and further relief as the Court may deem just, equitable, and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: August 19, 2025

W. Daniel "Dee" Miles, III
James Mitchell "Mitch" Williams
Dylan Martin
Trent Mann
**BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C**.
272 Commerce Street
Post Office Box 4160
Montgomery, Alabama 36103-4160
(334) 269-2343
(334) 954-7555 FAX
dee.miles@beasleyallen.com
mitch.williams@beasleyallen.com
dylan.martin@beasleyallen.com
Trent.mann@beasleyallen.com

**SMITH KRIVOSHEY, PC**
Joel D. Smith (SBN 244902)
867 Boylston Street 5th Floor #1520
Boston, MA 02116
Telephone: 617-377-4704
Facsimile: (888) 410-0415
E-Mail: joel@skclassactions.com

*Attorneys for Plaintiff and the Class*