IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| DIANE JOHNSTON, *individually and on behalf of all others similarly situated*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE. NO. 3:25-cv-653-RAH |
| VGW HOLDINGS, LTD., *et al.*, | ) ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

VGW Holdings, Ltd., VGW Malta Ltd., VGW Games Ltd., VGW Holdings U.S., Inc., and VGW U.S., Inc. (collectively, "VGW"), operate an online gaming website.[1] According to Plaintiff Diane Johnston, the website includes casino-style games of chance that she claims are illegal under Alabama law. Johnston seeks damages and declaratory and injunctive relief on a class-wide basis.

VGW has moved to compel arbitration, invoking the arbitration agreement contained in the account terms and conditions that Johnston and all other account holders agreed to as a condition of using the VGW website. The arbitration motion is opposed and fully briefed. After careful review, the motion is due to be granted.

## **BACKGROUND**

VGW operates a Malta-based online gaming website called "Chumba Casino" that offers virtual casino-style games such as slots, scratch cards, poker, and other table games. (Doc. 1 at 2.) A player can access the website and play games for free using "gold coins" in which the player pays nothing and receives nothing in return.

---

[1] For purposes of this order only, it is assumed that all of these entities operate the subject gaming website.

(*Id.*) But according to Johnston, a player can also purchase additional "gold coins" to enhance their experience. (*Id.*) Along with purchased gold coins comes "sweeps coins," which are received as a bonus. Players can then use the sweeps coins to wager for prizes. (*Id.*) Only sweeps coins are redeemable for prizes, including cash and cash equivalents such as gift cards. (*Id.*) Johnston claims that she has wagered and lost money on the VGW website. (*Id.* at 3.) She also claims that the games on the website constitute illegal gambling under Alabama law. Johnston seeks damages on behalf of herself and a punitive class under Ala. Code § 8-1-150(a). (*Id.* at 22.)

VGW seeks enforcement of the arbitration agreement contained in the terms and conditions that govern a player's use of the website. To play any of the games, a player must register a Chumba Casino account. (Doc. 16-2 at 3.) And account creation requires the player to affirmatively click a checkbox indicating that the player agrees to the Chumba Casino Terms and Conditions ("TOC"). (*Id.* at 4.) Additionally, whenever an updated version of the TOC is released, the player must affirmatively accept the updated terms in a pop-up notice before the player can continue playing the games. (*Id.* at 4–6.)

Pertinent to the time that Johnson used the website, the TOC contained a dispute resolution provision that stated the following:

> **We Both Agree To Arbitrate.** By agreeing to these Terms and Conditions, and to the extent permitted by applicable law, you and VGW Group each and both agree to resolve any Disputes — including any Dispute concerning the enforceability, validity, scope or severability of this agreement to arbitrate — through final and binding arbitration as discussed herein.

(*Id.* at 25.)[2]

---

[2] These are the TOC that Johnston accepted on July 31, 2025, immediately before filing this lawsuit. (Doc. 16-2 at 6.) Thus, they control. *See Pendergast v. Sprint Nextel Corp.*, 691 F.3d 1224, 1228 (11th Cir. 2012) (applying amended terms and conditions where party received notice of the changed terms on the company's website).

The dispute resolution provision broadly defined "Disputes" as "all past, present and future disputes, claims or causes of action between you and VGW Group arising out of or relating to these Terms and Conditions, the Platform and Games, the formation of these Terms and Conditions or any other dispute between you and VGW Group . . . and whether arising prior to or after your agreement." (*Id.*) It also contained a class action waiver. (*Id.* at 26.)

## LEGAL STANDARD

Motions seeking to compel arbitration are governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16. The principal purpose of the FAA is "to ensure judicial enforcement of privately made agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985). Generally, "[t]he role of the courts is to 'rigorously enforce agreements to arbitrate.'" *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1366 (11th Cir. 2008) (quoting *Dean Witter Reynolds, Inc.*, 470 U.S. at 221). Thus, "[t]he FAA embodies a liberal federal policy favoring arbitration agreements." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005) (quotation omitted).

A court's ruling on a motion to compel arbitration is "in effect a summary disposition of the issue of whether or not there has been a meeting of the minds on the agreement to arbitrate," and the legal standard is analogous to a summary judgment motion. *In re Checking Acct. Overdraft Litig.*, 754 F.3d 1290, 1294 (11th Cir. 2014) (quoting *Magnolia Cap. Advisors, Inc. v. Bear Stearns & Co.*, 272 F. App'x 782, 785 (11th Cir. 2008)). If the court concludes there "is no genuine dispute as to any material fact concerning the formation of such an agreement," it "may conclude as a matter of law that [the] parties did or did not enter into an arbitration agreement." *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1346 (11th Cir. 2017) (quoting *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir.

2016)). "If, on the other hand, the making of the agreement is in issue, 'the court shall proceed summarily to the trial thereof.'" *Id.* (quoting 9 U.S.C. § 4).

## DISCUSSION

Before a district court refers a dispute to an arbitrator, "the court [must] determine[] whether a valid arbitration agreement exists." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 149 (2024). Arbitration agreements may include multiple levels of agreements concerning arbitration. For one, contracting parties can "agree to send the merits of a dispute to an arbitrator." *Id.* at 148. Further, they can also "agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Id.* (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019)).

Arbitrability concerns "fundamental questions that will determine whether a claim will be brought before an arbitrator." *JPay, Inc. v. Kobel*, 904 F.3d 923, 930 (11th Cir. 2018). These include "scope" or "applicability" of the parties' arbitration agreement, that is, what set of disputes the arbitration agreement covers and whether it governs the issues at hand. *See id.* These also include issues that concern the "validity" or "enforceability" of an arbitration agreement, that is, whether the parties have entered into a legally operative arbitration agreement. *See Caley*, 428 F.3d at 1367–68.

Accordingly, whether a particular claim is to be decided by a court or an arbitrator "turns upon what the parties agreed about that matter." *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1264 (11th Cir. 2017) (emphasis omitted) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). By default, "a court would normally decide threshold disputes about whether a party's claims are arbitrable." *Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1295 (11th Cir. 2022). But the parties can agree to delegate resolution of these threshold disputes to an arbitrator rather than a court. This agreement is often known as a "delegation

4

provision" or "delegation clause." *See Coinbase, Inc.*, 602 U.S. at 150–52. A delegation clause "is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010).

Where "an arbitration agreement contains a delegation clause—committing to the arbitrator the threshold determination of whether the agreement to arbitrate is enforceable—the courts only retain jurisdiction to review" a specific challenge to the delegation clause. *Parnell v. Cashcall, Inc.*, 804 F.3d 1142, 1144 (11th Cir. 2015); *Jones*, 866 F.3d at 1264 (noting that a court "may examine a challenge to a delegation provision only if the claimant challenge[d] the delegation provision directly." (quotations omitted)). "Only if [the court] determine[s] that the delegation clause is itself invalid or unenforceable may [the court] review the enforceability of the arbitration agreement as a whole." *Parm v. Nat'l Bank of Cal., N.A.*, 835 F.3d 1331, 1335 (11th Cir. 2016).

A delegation clause may be unenforceable for the same reasons as any other contract. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 627 (1985). State law governs questions regarding the validity, revocability, and enforceability of arbitration agreements and delegation clauses. *See Caley*, 428 F.3d at 1368. To mount a challenge to the delegation clause, a plaintiff must allege a defense such as "fraud, duress, unconscionability, or another 'generally applicable contract defense'" to the delegation clause *specifically*, and not just the contract as a whole. *Parnell*, 804 F.3d at 1146 (quoting *Rent-A-Center*, 561 U.S. at 67–68).

Here, Johnston concedes that the TOC contains an arbitration agreement. But she claims the arbitration agreement is unenforceable because the arbitration agreement and the embedded delegation clause lack legal consideration; the arbitral forum will not administer the arbitration; and the arbitration agreement lacks

mutuality of obligation and is unconscionable. Johnston also claims that the declaratory relief sought in Count 1 falls outside the scope of the arbitration agreement. VGW argues that Johnston's assertions are largely issues of contract enforceability and validity—that is, arbitrability—and therefore are issues for the arbitrator to resolve because of the delegation clause found in the arbitration agreement.

The arbitration agreement provision contains the following language: "you and VGW Group each and both agree" to resolve "all past, present and future disputes, claims or causes of action between you and VGW Group" including "any Dispute concerning the enforceability, validity, scope or severability of this agreement to arbitrate" through "final and binding arbitration." (Doc. 16-2 at 25.) This language constitutes the typical type of delegation language regularly enforced by courts. *See Rent-A-Center*, 561 U.S. at 65.

That is not the sole source of the parties' agreement to delegate certain threshold issues. The arbitration agreement also requires the arbitration to be administered by JAMS and incorporates JAMS' Streamlined Arbitration Rules into the arbitration agreement. (Doc. 16-2 at 26.) Rule 8(b) of the Streamlined Arbitration Rules provides that "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter."[3] The incorporation of this JAMS rule about the arbitrator's authority "to determine jurisdiction and arbitrability issues as a preliminary matter" evidences a clear and unmistakable intent by the parties to arbitrate threshold arbitrability disputes. *See*

---

[3] JAMS, Streamlined Arbitration Rules & Procedures, https://www.jamsadr.com/rules-streamlined-arbitration#Rule-8.

6

*JPay, Inc.*, 904 F.3d at 937 (holding that the "parties clearly and unmistakably" intended to delegate questions of arbitrability because the arbitration agreement incorporated arbitration rules that grant the arbitrator "power to rule on his or her own jurisdiction"); *Attix*, 35 F.4th at 1296 (same); *Foote v. All Elite Wrestling, LLC*, No. 3:24-cv-1206-HES, 2025 WL 1913228, at *2 (M.D. Fla. June 11, 2025) ("Incorporating the JAMS rules and procedures validly delegates arbitrability to the arbitrator.").

Because of the express delegation clause in the arbitration agreement and the incorporation of JAMS' arbitration rules, Johnston and VGW clearly and unmistakably agreed to delegate questions of arbitrability to an arbitrator. The question therefore becomes whether the Court may entertain Johnston's arguments in opposition to enforcement of the arbitration agreement, or whether her arguments constitute issues of arbitrability delegated to the arbitrator. The Court concludes that all but her first argument—that the delegation clause is unsupported by valid consideration—are issues of arbitrability for the arbitrator.

First, Johnston argues that the delegation clause and the arbitration agreement cannot be enforced because they are founded upon illegal gambling consideration. The Court disagrees.

To the extent that Johnston specifically attacks the formation of the delegation clause itself, her argument lacks merit. The delegation clause is supported by valid consideration separate and apart from the remainder of the agreement because mutual promises to arbitrate and mutual promises to delegate certain issues to the arbitrator are adequate consideration. *Ex parte Bill Heard Chevrolet, Inc.*, 927 So. 2d 792, 801–02 (Ala. 2005) (holding that mutual promises to pursue arbitration rather than litigation are sufficient consideration); *Wright v. Circuit City Stores, Inc.*, 82 F. Supp. 2d 1279, 1284 (N.D. Ala. 2000) (applying Alabama law); *see also Kelsoe v. Int'l Wood Prod., Inc.*, 588 So. 2d 877, 878 (Ala. 1991) (consideration for

a contract exists when "there [i]s an act, a forbearance, a determinant of a legal right, or a return promise, bargained for and given in exchange for the promise."). And as the Supreme Court has recognized, valid delegation clauses must be enforced regardless of whether the larger contract is allegedly void for illegality. *Buckeye Check Cashing, Inc.*, 546 U.S. at 449 (holding that challenges to the legality of a contract as a whole, and not specifically to the arbitration agreement, must go to the arbitrator); *M.M. v. VGW US, Inc.*, No. 25-cv-10514-DJC, 2026 WL 34452, at *6 (D. Mass. Jan. 6, 2026) (finding delegation clause supported by valid consideration separate and apart from remainder of contract alleged to be premised on illegal consideration); *Huynh v. Boom Shakalaka, Inc.*, No. 2:25-cv-8121-HDV, 2026 WL 247880, at *4–5 (C.D. Cal. Jan. 28, 2026).

To the extent Johnston challenges the legality of the TOC as a whole or the arbitration agreement generally, those are issues the resolution of which the parties expressly delegated to the arbitrator. *See Nitro-Lift Techs., LLC v. Howard*, 568 U.S. 17, 20–21 (2012) (per curiam) ("[I]t is a mainstay of the [FAA's] substantive law that attacks on the validity of [a] contract, as distinct from attacks on the validity of the arbitration clause itself, are to be resolved 'by the arbitrator in the first instance, not by a federal or state court.'" (quoting *Preston v. Ferrer*, 552 U.S. 346, 349 (2008))); *Buckeye Check Cashing, Inc.*, 546 U.S. at 445–46 ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."); *Parm*, 835 F.3d at 1335 ("Only if [a court] determine[s] that the delegation clause is itself invalid or unenforceable may [the court] review the enforceability of the arbitration agreement as a whole.").

Second, Johnston argues that the arbitration agreement and delegation clause are unenforceable because the parties' chosen arbitral forum is unavailable. Johnston argues that JAMS will not administer the arbitration because the terms of the arbitration agreement conflict with JAMS' Minimum Standards. But whether JAMS

8

will or will not administer the arbitration is an issue of arbitrability that the parties delegated to the arbitrator. *See Bedgood v. Wyndham Vacation Resorts, Inc.*, 88 F.4th 1355, 1368 (11th Cir. 2023). Should JAMS refuse to administer the arbitration, Johnston may then seek the appropriate relief from this Court. *See id.* (affirming district court's denial of motion to stay litigation where arbitral forum refused to administer arbitration because the arbitration agreement conflicted with the arbitral forum's rules).

Johnston next argues that the arbitration agreement is illusory, lacks mutuality, and is unconscionable. But these too are challenges to the TOC and the arbitration agreement in general, and therefore are issues of arbitrability delegated to the arbitrator. But even if considered in the most gracious light possible as directed to the delegation clause, Johnston's arguments are far too generalized and therefore do not sufficiently constitute a "specific challenge" to the delegation clause. *Attix*, 35 F.4th at 1304 ("To 'directly' or 'specifically' challenge the validity or enforceability of a delegation agreement, it is not sufficient for a party to merely say the words, 'I am challenging the delegation agreement.' Challenging a delegation agreement is a matter of substance, not form."). Johnston's response "only challenges the arbitration provision generally and therefore falls short of the *Rent-A-Center* pleading requirements." *Parnell*, 804 F.3d at 1148; *see also Jones*, 866 F.3d at 1265 (finding the delegation clause was not directly challenged when "the heart of [plaintiff's] argumentation was directed at the agreement as a whole").

While Johnston attempts to silo these issues into ones directed solely to the arbitration agreement and delegation clause, they are really attacks that go to the parties' agreement as a whole and their relationship in general. At best, Johnston's arguments challenging the delegation clause are intertwined and equally applicable to her arguments challenging the arbitration agreement and the contract as a whole. When that is the case, these types of disputes are for the arbitrator. As such, her

claims surrounding illusoriness, lack of mutuality, and unconscionability all are for the arbitrator to decide. To the extent they are not, Johnston has not sufficiently shown that the delegation clause is unenforceable, as there is nothing inherently unconscionable about a delegation clause and the pertinent clause here is supported by mutual promises to arbitrate. Contrary to Johnston's arguments, VGW's ability to change or add terms does not render the delegation clause unenforceable because the TOC requires the player's notice and consent before any amendment "that would limit [the player's] current rights or which may be to [the player's] detriment." (Doc. 16-2 at 27.) *See, e.g.*, *Larsen v. Citibank FSB*, 871 F.3d 1295, 1320–21 (11th Cir. 2017) (holding change-in-terms provision enforceable because it required advance notice); *In re Checking Acct. Overdraft Litig.*, 856 F. App'x 238, 245–46 (11th Cir. 2021) (holding change-in-terms provision enforceable because it required thirty-days advance notice).

Lastly, Johnston argues that her claim for declaratory relief falls outside the scope of the arbitration agreement and that the arbitrator cannot award her the declaratory relief that she seeks.[4] Whether the arbitration agreement covers this claim is an issue of arbitrability that the parties expressly delegated to an arbitrator. (Doc. 16-2 at 25 (delegating disputes concerning scope to an arbitrator).) Further, the declaratory judgment claim is nothing more than a claim centered upon the merits of Johnston's other claims—the legality of the VGW website under Alabama law. Whether couched as damages, injunctive relief, or a declaratory judgment, it is a merits-based claim that clearly falls within the scope of the arbitration agreement. *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*, 203 F.R.D. 677, 689 (S.D. Fla. 2001) ("Where a complaint presents squarely

---

[4] There is no reason that a declaratory judgment action cannot be sent to an arbitrator. *See Weiner v. Tootsie Roll Indus., Inc.*, 412 F. App'x 224, 225 (11th Cir. 2011) (affirming district court order compelling arbitration of a declaratory judgment claim).

arbitrable issues for adjudication, a party may not sidestep arbitration by selectively couching the underlying dispute in terms of 'fraud' or 'breach of contract' or 'declaratory judgment.'") (citing *Gregory v. Electro-Mech. Corp*., 83 F.3d 382, 384 (11th Cir. 1996)). And to the extent that Johnston says it does not, that is an issue for the arbitrator.

## CONCLUSION

Johnston's opposition to VGW's arbitration motion raises issues of arbitrability that the parties agreed to submit to the arbitrator for resolution. Since these are arbitrable disputes, section 3 of the FAA compels the Court to stay these proceedings. *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). Thus, all of Johnston's claims against VGW will be stayed pending conclusion of the arbitration proceeding. The Court expresses no opinion on the merits of Johnston's claims or on the underlying arbitrability of its claims. *See Attix*, 35 F.4th at 1309 (addressing only who decides "whether the parties must arbitrate").

Accordingly, it is **ORDERED** as follows:

(1)    Defendants' *Motion to Dismiss* (doc. 15) is **DENIED** as moot;

(2)    Defendants' *Alternative Motion to Compel Arbitration* (doc. 16) is **GRANTED**;

(3)    The parties are compelled to arbitration pursuant to the arbitration agreement contained in the TOC;

(4)    This case is **STAYED** pending conclusion of the arbitration; and

(5)    On or by **July 1, 2026**, the parties shall file a status report concerning the arbitration, and shall file updated reports every 90 days thereafter.

**DONE** and **ORDERED** on this the 12th day of March 2026.

R. AUSTIN HUFFAKER, JR.
CHIEF UNITED STATES DISTRICT JUDGE